UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE GOLDEN,<br><br>Plaintiff,<br><br>v.<br><br>STATE MILITARY DEPARTMENT, NATIONAL GUARD, STATE OF CALIFORNIA, et al.,<br><br>Defendants. | No. 2:16-cv-00507-KJM-AC<br><br>ORDER |

       Michelle Golden sues the California State Military Department (CMD), alleging vicarious liability due to the conduct of Lieutenant Colonel Nadar Araj, which Golden contends led to her husband David Golden's suicide. CMD moves to dismiss, contending liability is improper because Araj is not a CMD "employee." At hearing on February 24, 2017, Dennis Wilson appeared for plaintiff and Matthew Besmer and William Downer appeared for defendant. ECF No. 44. As discussed below, the court GRANTS defendant's motion to dismiss without leave to amend.

I.     BACKGROUND

       David Golden had been a CMD employee for over twelve years, serving as an Information Services Branch Manager and Systems Software Specialist. Second Am. Compl.

1

(SAC) ¶¶ 7–8, ECF 39.  As a member of the CMD, Golden was hired to report to the Director of Information Management and provide recommendations on web-related matters.  *Id.* ¶ 11.  When the Director resigned, Lieutenant Colonel Araj, a federal technician for the National Guard within the CMD, became Golden's superior.  *Id.* ¶ 13.  While at the CMD, Araj worked under the "complete control" of the California Adjutant General, the head of the CMD.  *Id.* ¶ 13.  The CMD provided Araj with a workplace, equipment, and assigned him responsibilities to oversee civilian employees like Golden.  *Id.*

Golden suspected Araj awarded contracts on behalf of the CMD without first submitting the contracts to a competitive bidding process, in violation of the California Public Works and Contract Act's bidding requirements.  *Id.* ¶ 14.  Golden reported the suspected violation to the Provision Division of the California General Services Department, which had authority to investigate, discover or correct the violation.  *Id.* ¶ 15.  After Golden made his report, Araj demoted Golden to "first level supervisor" and assigned him tasks below his experience level.  *Id.* ¶ 17.

Golden unsuccessfully attempted to appeal his demotion, which exacerbated his post-traumatic stress disorder, a condition he obtained while serving in the Army before working at the CMD.  *Id.* ¶¶ 8, 33, 34.  Two days after hearing his demotion would go forward with a pay cut, Golden committed suicide.  *Id.* ¶¶ 34–35.  Golden's spouse Michelle brings this suit against the CMD for wrongful death and retaliation, contending that Araj, in his scope as a CMD employee, engaged in improper retaliatory conduct.  *Id.* ¶ 37.

Plaintiff filed the operative complaint against CMD alleging retaliation in violation of California Labor Code sections 98.6 and 1102.5 and wrongful death.  *Id.* ¶¶ 37–38.  Defendant moved to dismiss.  Mot., ECF No. 40.  Plaintiff opposes, Opp'n, ECF No. 42, and defendant replies, Reply, ECF No. 43.

II. LEGAL STANDARDS

A party may move to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The motion may be granted only if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory.

2

| 1 | *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013). The court assumes these factual allegations are true and draws reasonable inferences from them. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678. Accordingly, conclusory or formulaic recitations of a cause's elements do not alone suffice. *Id.* (quoting *Twombly*, 550 U.S. at 555).

Evaluation under Rule 12(b)(6) is a context-specific task drawing on "judicial experience and common sense." *Id.* at 679. Aside from the complaint, district courts have discretion to examine documents incorporated by reference, *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012); affirmative defenses based on the complaint's allegations, *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013); and proper subjects of judicial notice, *W. Radio Servs. Co. v. Qwest Corp.*, 678 F.3d 970, 976 (9th Cir. 2012).

III. <u>ANALYSIS</u>

Plaintiff alleges the CMD is liable for Araj's retaliatory conduct, which led to Golden's wrongful death. SAC ¶¶ 37–38. Defendant contends CMD cannot be held liable because Araj was not a CMD "employee," and in any event, the opposition of Araj's employment status is non-justiciable. Mot. at 11. Plaintiff argues in opposition that Araj was a "co-employee" of the CMD subject to the "complete control" of the California Adjutant General. Opp'n at 5. Plaintiff further contends that because Araj's employment status hinges on "civilian" matters within the military, the question is justiciable. *Id.* at 8.

Accordingly, there are two dispositive issues here: (1) whether the question of Araj's employment status is justiciable, and, if so, (2) whether Araj, a federal technician for the National Guard, was an "employee" of the CMD. As discussed below, although Araj's employment status is justiciable, Araj was not a CMD employee at the time of the events giving rise to plaintiff's second amended complaint.

3

A.  Justiciability

"Justiciability is itself a concept of uncertain meaning and scope. Its reach is illustrated by the various grounds upon which questions sought to be adjudicated in federal courts have been held not to be justiciable." *Gilligan v. Morgan*, 413 U.S. 1, 9 (1973) (internal citations omitted). Generally, there is no judicial controversy "(a) 'when the parties are asking for an advisory opinion,' (b) 'when the question sought to be adjudicated has been mooted by subsequent developments,' (c) 'when there is no standing to maintain the action.'" *Id.* at 9–10 (citing *Flast v. Cohen*, 392 U.S. 83, 95 (1968)). In *Gilligan*, the Supreme Court added another category of non-justiciable matters: where "the nature of the questions to be resolved [] are subjects committed expressly to the political branches of government." *Gilligan*, 413 U.S. at 10. The Court added this category because "it is difficult to conceive of an area of governmental activity in which the courts have less competence." *Id.*

In *Gilligan*, the Court distinguished between matters stemming from the "civilian sector" of the military and "complex subtle, and professional decisions as to the composition, training, equipping, and control of a military force." *Id.* at 10, 11 n.16. Whereas courts were "fully empowered to consider claims" intruding into the military's civilian sector, complex professional decisions amounting to control of the military force were matters "appropriately vested in branches of the government . . . periodically subject to electoral accountability," such as the Legislative and Executive Branches. *Id.* at 10, 11 n.16.

In *Gilligan*, the Court held as non-justiciable a group of students' challenge to the "pattern of training, weaponry and orders [used by the] Ohio National Guard" to apply fatal force in suppressing a protest. *Id.* at 3, 11–12. The Court concluded the students' case amounted to a "broad call on judicial power to assume continuing regulatory jurisdiction over the activities of the Ohio National Guard," which would compromise Congress's responsibility for "organizing, arming, and disciplining the Militia." *Id.* at 5, 8. The Court declined to exercise such jurisdiction. *Id.* at 12.

Similarly, in *Mier v. Owens*, the Ninth Circuit declined to exercise jurisdiction over the plaintiff's case, which sought to challenge a decision of a National Guard adjutant and

Army Secretary to deny a military promotion. 57 F.3d 747, 748, 751 (9th Cir. 1995). Finding plaintiff's claim challenging defendants' failure to "promote [him] to the rank of Major" non-justiciable, the court held "[d]ecisions regarding who is promoted and why are central to maintenance of the military's hierarchy." *Id.* at 751. The court declined to exercise jurisdiction, and the plaintiff's claims were dismissed. *Id.*

Here, plaintiff asks the court to deem Araj a CMD employee. Opp'n at 4. This determination requires the court to review 32 C.F.R. § 536.97, which determines the employment status of National Guard technicians, and assess how much "control" the CMD had over Araj's employment. *Krueger By & Through Krueger v. Mammoth Mountain Ski Area, Inc.*, 873 F.2d 222, 223 (9th Cir. 1989).

The question of Araj's employment status is justiciable. Determining his status does not require that the court assess the appropriateness of a military decision relating to the "composition, training, equipping, [or] control of a military force." *Gilligan*, 413 U.S. at 10. The court need only assess how much control the CMD had over Araj's employment. *Krueger*, 873 F.2d at 223. Accordingly, without assessing the propriety of a military decision, the court can look to applicable statutes and relevant case law to determine how much control, if any, the CMD exerted. This inquiry will not resolve "subjects committed expressly to the political branches of government," and will not compromise Congress's responsibility for "organizing, arming, and disciplining the Militia." *Gilligan*, 413 U.S. at 6, 10. Because a determination of Araj's employment will not "seriously impede the military in performance of its vital duties," *Mier*, 57 F.3d at 750, the court proceeds to determine if plaintiff may hold the CMD liable for Araj's alleged retaliatory conduct in light of Araj's position.

B. <u>Vicarious Liability</u>

Plaintiff contends because Araj is a CMD employee, CMD is vicariously liable for his conduct. Opp'n at 5. CMD's liability is governed by the California Tort Claims Act, which reads in relevant part:

/////

/////

> A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

Cal. Gov't Code § 815.2; *see also* Opp'n at 5. The Tort Claims Act defines employee as "an officer, judicial officer . . ., employee, or servant, whether or not compensated, but does not include an independent contractor." Cal. Gov't Code § 810.2. This definition has evolved to mean "[a] person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control." *Townsend v. State of Cal.*, 191 Cal. App. 3d 1530, 1535 (1987). Remuneration is not essential to finding an employer-employee relationship. *Krueger*, 873 F.2d at 223. The essential element is the "master's" or employer's degree of control over the party providing the service. *Id.*

In *Krueger*, the Ninth Circuit reversed the lower court's grant of summary judgment where the record left the question of "control" wanting. *Id.* at 224. Specifically, the Ninth Circuit noted it was unclear whether the tortfeasor, a member of the ski resort's competition team, was an "employee" for purposes of respondeat superior liability because the record was rife with logical gaps and lacked facts needed to establish the extent of the ski resort's control over the team member. *Id.* The case was reversed and remanded for the factfinder to apply the appropriate factors in determining whether there was sufficient control. *Id.*

In *Lanier*, the defendant City's ability to hire and fire the plaintiff's supervisor sufficed for "control." *Lanier v. United States*, No. 15–360, 2016 WL 614048, at *9 (S.D. Cal. Feb. 16, 2016). The plaintiff had filed an employment-related tort action against the City of Chula Vista for its role in the High Intensity Drug Trafficking Area ("HIDTA") program. *Id.* at *1–2. The HIDTA program was a federal initiative organized under the Office of National Drug Control Policy with a purpose to "reduce drug trafficking and drug production in the United States" by, among other things, facilitating cooperation among state and local law enforcement agencies to share information and implement coordinated enforcement activities. *Id.* at *1. The program's executive board granted the City funds to "hir[e] employees, issu[e] contracts,

manag[e] property, and expend[] HIDTA program funds as necessary to carry out the grant activities under the general review of the HIDTA Executive Board." *Id.* at *2. Notably, the Budgetary Guidance accompanying the statute made clear any HIDTA Directors were employees of the grantee City "subject to all employment, contracting, and other conditions established by that grantee." *Id.* at *8.

The plaintiff alleged the City was vicariously liable for the tortious acts of the plaintiff's supervisor, a HIDTA Director who was also a "payroll employee of the City of Chula Vista." *Id.* at *1–2. The City, however, argued because the Director was subject "to the operations of the HIDTA," the City had no right to control the Director, and that person therefore was not a City employee or servant. *Id.* at *8.

The court disagreed with the City. Finding no facts to support the notion that the "HIDTA Director's obligations [we]re owed to the HIDTA program or Executive Board at the exclusion of the [City]," and because the City had the ability to hire and manage the director, the court found the City had a right to control the Director. *Id.* at *8–9. Accordingly, the court deemed the Director to be an employee of the City, and the City's motion to dismiss was denied. *Id.*

Here, at all times relevant to this action, Araj was a federal technician with the National Guard, who was "assigned" to oversee Golden's employment in the CMD. SAC ¶ 13. In this capacity, Araj's employment was under the control of the California Adjutant General who headed the CMD. *Id.* Plaintiff does not allege or contend Araj served in any capacity other than a National Guard federal technician when assigned to oversee Golden's employment in the CMD.

/////
/////
/////
/////
/////
/////
/////

7

As a technician with the National Guard, Araj's position fell within the scope of the National Guard Claims Act. The regulation governing the Act's scope provides in relevant part:

> In 1968, technicians, who were state employees formerly, were made federal employees. Along with federal employee status came F[ederal Torts Claims Act] coverage. Technicians no longer have any state status, albeit they are hired, fired, and administered by a state official, the Adjutant General, acting as the agent of the federal government.

32 C.F.R. § 536.97. Notably, the regulation specifically acknowledges a state Adjutant General's control over the federal technician, but provides that the General acts an "agent" of the federal government to the extent he controls the technician's employment affairs. *Id.* Accordingly, control by the state Adjutant General constitutes control by the federal government, making this case distinguishable from *Lanier*.

Plaintiff also alleges Araj had the characteristics of a state employee because the state provided his workplace and equipment and placed Golden under his supervision. Opp'n at 5. Although an employer's supplying the "instrumentalities, tools, and the place of work for the person doing the work" can be a factor in determining whether a tortfeasor is an employee of the defendant, *Krueger*, 873 F.2d at 223 n.3, plaintiff cites no authority for the proposition this factor alone is enough to overcome the plain reading of the National Guard Claims Act's regulation, and the court has located none. Araj is not a CMD employee within the meaning of section 815.2. Accordingly, CMD cannot be vicariously liable for Araj's conduct.

IV. <u>LEAVE TO AMEND</u>

Under Rule 15 of the Federal Rules of Civil Procedure, leave to amend is to be granted freely. Fed. R. Civ. P. 15(a). The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995). The court need not grant leave to amend, however, if doing so would be futile. *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

As discussed above, because Araj is not a CMD employee as a matter of law, plaintiff cannot amend to allege facts sufficient to subject CMD to liability. At hearing, plaintiff did not indicate a plan to substitute another individual for Araj. Accordingly, leave to amend, based on the record and information presented at hearing, would be futile.

V. CONCLUSION

Because CMD is the only defendant in this suit, and because CMD's alleged liability derives solely from plaintiff's vicarious liability theory, defendant's motion to dismiss is GRANTED without leave to amend.

This resolves ECF No. 40.

IT IS SO ORDERED.

DATED: August 15, 2017.

_____
UNITED STATES DISTRICT JUDGE